UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ELLEN STIMSON,                           )
                                         )
         Plaintiff,                      )
                                         )
      v.                                 )      Case No. 2:23-cv-581
                                         )
STATE FARM FIRE AND CASUALTY             )
CO.,                                     )
                                         )
         Defendant.                      )

**OPINION AND ORDER**

Plaintiff Ellen Stimson brings this action against State Farm Fire and Casualty Company ("State Farm") alleging that State Farm failed to make adequate payment on her insurance claim after a fire damaged her home. The fire was reportedly caused by an electrical surge. Pending before the Court are motions for summary judgment filed by both parties (ECF Nos. 55, 56). Stimson has also filed a motion for sanctions (ECF No. 71) and a motion to exclude certain evidence from State Farm's supplemental pleading (ECF No. 76). State Farm filed responses (ECF Nos. 77, 78).

For the reasons set forth below, the Court denies both motions for summary judgment. The Court also issues sanctions against State Farm. The Court denies as moot, and without prejudice, Stimson's motion to exclude evidence.

**Procedural Posture**

The scheduling order in place for this case set the summary judgment deadline at July 16, 2025.  *See* ECF No. 51. Previously, while discovery was still open, the Court issued an order granting Stimson's unopposed motion to compel responses to her document requests and interrogatories, and to require State Farm's Rule 30(b)(6) witness to appear for a deposition on a certain date and at a place designated by Stimson.  *See* ECF No. 54.  In the order, the Court also held that "the parties must also amend the discovery schedule to account for the late disclosure and deposition of Defendant's Rule 30(b)(6) witness." *See* ECF No. 54 at 2.  Yet the parties did not file a new discovery schedule, perhaps because the deposition never took place.

On July 18, 2025, Stimson filed her motion for partial summary judgment with an accompanying memorandum and statement of undisputed facts.  *See* ECF No. 55 (and attachments).  Under Local Rule 7(a)(3)(A), a memorandum in opposition would have been due August 17, 2025.  However, State Farm did not file an opposition.  Because State Farm did not file any opposing statement, it also did not follow Local Rule 56(b), which states that a party opposing summary judgment "must include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs, admitting, denying, or

2

otherwise responding to each numbered paragraph in the moving party's statement."

On July 28, 2025, State Farm filed a cross motion for summary judgment, along with an accompanying memorandum in support and its own statement of undisputed facts.  *See* ECF No. 56 (and attachments).  State Farm's memorandum is seven pages long, two pages of which are a signature page and a certificate of service page (both of which have empty signature lines).  ECF No. 56-2.  On August 6, 2025, Stimson filed her timely opposition along with a response to State Farm's statement of undisputed facts.  *See* ECF No. 60.

This Court held a hearing on the cross motions and discovery issue on December 22, 2025.  At the hearing, Stimson's attorney informed the Court that Stimson still had "not received any discovery at all," even though State Farm's attorney had represented that he received the claim file from State Farm in March.  ECF No. 66 at 2.  State Farm's attorney stated that his office had received the documents after February, but that he then left the firm and received the documents again in May.  ECF No. 66 at 16.  He said that he was "ill equipped" to get the documents to Stimson "in a timely fashion."  *Id.*  He said that his "situation changed" but that this was "not an excuse" it was "just a non-nefarious explanation."  *Id.* at 17.  The Court reminded State Farm that there was "a court order here" and

3

stated that: "I've never, quite frankly, seen this in which I have issued an order saying, okay, you've got to have depositions by such and such a date, you've got to make full discovery to the other side, and have it totally ignored." *Id.* at 18. The Court was trying to figure out "how this could possibly happen." *Id.* State Farm's attorney insisted that:

> Our position was not that we would not—that we would in—disobey a court order. That was never my intention. It was never my position. I've been doing this for 38 years. It's not an excuse. It's the first and only time it's ever happened.

*Id.* at 19. No further explanation was given by State Farm's attorney as to why State Farm failed to comply with the Court's order.

The Court set new deadlines. State Farm had to provide discovery within 15 days; 30 days from that date the discovery depositions had to be completed; and 15 days from that date the parties could submit additional pleadings. ECF No. 66 at 38.

At the hearing, the Court also expressed specific interest in whether or not there was a written agreement to the appraisal between the parties. *Id.* at 35. This was a fact that neither party had addressed in their summary judgment briefing.

On February 17, 2026, the parties filed a consented-to motion for additional time to file their supplemental briefs. ECF No. 69. The Court granted the extension. ECF No. 70. On March 5, 2026, Stimson filed a Motion for Sanctions for

4

Continued Failure to Produce Discovery (ECF No. 71). On March 9, both parties filed supplemental memoranda (ECF Nos. 72, 73). On March 21st, Stimson filed a Motion to Exclude Inadmissible Evidence from State Farm's Supplemental Memorandum (ECF No. 76). On March 27th, State Farm filed responses to Stimson's Motion for Sanctions and Motion to Exclude. (ECF Nos. 77, 78).

### Factual Background

The following summarized facts are undisputed[1] unless otherwise noted, and have been taken from the statements of facts attached to the parties' motions for summary judgment.

*A. Fire*

The Plaintiff, Ellen Stimson, owns a home in Dorset, Vermont. On October 15, 2022, a power surge caused an electrical file in the basement of Stimson's home. The fire caused significant damage to the house and to the family's personal property. At the time of the fire, Stimson was a policyholder with State Farm, and the damage was covered.

*B. Policy Terms*

---

[1] Under Federal Rule of Civil Procedure 56(e): "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… consider the fact undisputed for purposes of the motion." Though Stimson addressed all of State Farm's facts, State Farm ignored many of Stimson's facts. The Court will treat these facts as undisputed.

A copy of the State Farm Homeowners Policy is filed at ECF No. 55-1. "Section I" includes a list of property coverages, which includes "Coverage A—Dwelling"; "Coverage B—Personal Property"; and "Coverage C—Loss of Use." *See id.* at 8-11.

Stimson has also provided evidence of the policy coverage limits, in a document titled "Declaration Pages and Homeowners Amendatory Endorsement" attached to her summary judgment motion at ECF No. 55-2. The relevant limits include the following:

- Coverage A Dwelling: $875,000
    - o Other Structures: $87,500
    - o Option ID: increase of dwelling coverage of $175,000
    - o Option OL: Ordinance/Law 10%: $87,500
    - o Debris Removal: Additional 5%[2] available / $1,000 tree debris
    - o Trees, Scrubs, and Landscaping: 5% of Coverage A amount / $750 per item
- Coverage B Personal Property: $656,250
- Coverage C Loss of Use: $262,500[3]

---

[2] In her original motion for summary judgment, Stimson listed this limit as $43,750, because five percent of the coverage for A: Dwelling is $43,750 (because 875,000 * .05 = 43,750). In her supplemental pleading, she added the Option ID to the Coverage A amount, and listed the limit as $52,500. ECF No. 73 at 10. Finally, in her motion to exclude, she explained that she believed that—for debris removal coverage—the limit is 5% of *total* coverage available, with a limit of $92,312.50. ECF No. 76 at 12.

[3] Coverage C does not appear to be at issue in this lawsuit.

*See* ECF No. 55-2 at 4-5.

The policy itself includes an appraisal provision that begins with the following language:

> **Appraisal.**  If *you* and *we* fail to agree on the amount of loss, the amount of loss will be set by appraisal if *you* and *we* agree to appraisal.  Only *you* or *we* may request and agree to appraisal.  An agreement for appraisal must be in writing. […]  The party requesting appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

*See* ECF No. 55-1 at 24.  Under part (b) of the Appraisal section, the policy states that:

> The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them.  In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.
>
> The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

*Id.*

Under part (c) of the Appraisal section, a process is set forth whereby "[i]f the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire."  *Id.*  Under part (g), the policy states that "*you* and *we* do not waive any rights by agreeing to or submitting to an

7

appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute," and under part (j), it states that "a party may not agree to appraisal after that party brings suit or action against the other party relating to the amount of loss."  *Id.*

The policy also addresses lawsuits.  It says:

> **Suit Against Us.**  No action will be brought against **us** unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

> However, your right to bring legal action against **us** is not conditioned upon **your** compliance with the **SECTION I – CONDITIONS, 4. Appraisal**.  Once an appraisal award has been determined, **you** will not be permitted to file suit against **us.**

*See* ECF No. 55-1 at 25.

*C. Appraisal Process and Suit*

In March of 2023, Stimson was diagnosed with blood cancer (myeloproliferative neoplasm) and her public adjuster made State Farm aware of this in April of 2023.  *See* ECF No. 55-17 at 4; ECF No. 55-16 at 3.  On May 11, 2023, State Farm sent Stimson a letter stating that it hereby "demands an appraisal."  *See* ECF No. 55-5.  State Farm stated that "it does not appear that we will be able to come to an agreement and thus wish to proceed with the appraisal process."  *Id.* at 1.  The letter told Stimson that: "[p]ursuant to said terms of the policy, you are required to select a qualified, disinterested appraiser and are required

to notify us of such a selection within twenty (20) days of receipt of this letter." *Id.* at 3.  The letter included "the itemized specific areas of dispute as to the amount of the loss, breaking down separately each item being disputed to the best [sic] possible, based on the format the estimates are each written." *Id.* at 1-2.  The "Specific Areas of Dispute" were set forth as follows:

**Specific Areas of Dispute**

| | State Farm | Sable Adjusters | Blanc & Bailey |
|---|---|---|---|
| ACOUSTICAL TREATMENTS | 6,039.90 | $35,058.29 | $7,000.00 |
| APPLIANCES | $19,017.44 | $1,515.19 | $40,800.00 |
| CABINETRY- COUNTERTOPS | $40,798.60 | $33,398.07 | $67,000.00 |
| GENERAL CLEANING | | $31,550.51 | $6,000.00 |
| GENERAL DEMOLITION | $10,806.76 | $19,943.88 | $14,100,00 |
| DRYWALL | $28,458.98 | $47,051.40 | $122,000.00 |
| ELECTRICAL | $26,787.92 | $49,178.67 | $71,325.00 |
| FLOOR COVERING STONE | $1,183.89 | $3,152.37 | |
| FLOOR COVERING TILE | $1,025.85 | $1,249.80 | $9,200.00 |
| FLOOR COVERING WOOD | $70,702.95 | $64,623.17 | $102,482.00 |
| PERMITS & FEES | Paid based on actual cost | $75,000.00 | $1,500.00 |
| FINISH CARPENTRY / TRIM | $52,232.74 | $78,330.91 | $34,690.00 |
| FINISH HARDWARE | $11,873.63 | $14,494..74 | $10,000.00 |
| FIREPLACES | $4,666.74 | $317.12 | $10,000.00 |
| FRAMING | $22,633.17 | $28,658.59 | $37,800.00 |
| HVAC SYSTEMS | $15,839.67 | $10,053.47 | $106,250.00 |
| INSULATION (ALL) | $15,969.63 | $18,956.41 | $98,000.00 |
| LABOR ONLY | $0.00 | $133,918.56 | ? |
| LIGHT FIXTURES | $5,927.26 | $5,939.10 | $10,000.00 |
| MASONRY | $9,563.83 | $1,544.18 | $15,250.00 |
| PANELING & WOOD WALL FINISHES | $3,375.29 | $10,323.56 | $15,700.00 |
| PAINT | $70,840.95 | $71,153.11 | $132,312.00 |
| SIDING | $3,083.76 | $7,147.08 | $7,500.00 |
| STAIRS | $6,269.64 | $11,277.39 | $40,000.00 |
| TILE | $5,281.92 | $4,206.25 | $22,200.00 |
| WINDOW TREATMENTS | $1,782.42 | $1,113.42 | $15,000.00 |
| WALLPAPER | $3,189.19 | $8,293.93 | $10,000.00 |

ECF No. 55-5 at 2.

Stimson paid for her own appraiser to represent her in the process. However, State Farm's appraiser had not agreed to an award by October of 2023. At that time, Stimson requested an extension of the "suit against us" provision. State Farm did not grant the extension.

Stimson filed suit on October 13, 2023.

On November 22, 2023, an appraisal award was issued by both appraisers. *See* ECF No. 55-13. The appraisers determined that the replacement cost value amounted to $940,272.63 and the actual cash value amounted to $755,990.65. *Id.* The award states: "This award includes all dwelling damage and is both final and binding. This award includes all damage to the structure, including any and all third-party mitigation expenses. The award is inclusive of all dwelling damages in totality." *Id.*

Stimson and her husband are living in their incomplete home, in the downstairs guestroom. *See* ECF No. 55-16, at 3.

D. *Damages*

Stimson hired a contractor to repair the fire damage to her home, and she states that she reduced the overall costs of repair by reducing the footprint of her home, including eliminating the dining room. *See* ECF No. 55-16 at 2-3. Stimson has attached invoices from her contractor, Blanc & Bailey, to her motion for summary judgment. These invoices show that as of

10

May 31, 2024, she had already been invoiced for $1,068,147.38, with $169,618.02 of that amount being for repairs done for code compliance.  *See* ECF No. 55-4 at 3.  Stimson states that the total cost of repair to date is $1,331,770.79, though she has not attached additional invoices to corroborate this amount. *See* ECF No. 55-16 at ¶ 29.

Stimson also attached evidence relating to the damage to her personal property.  Sable Adjusters prepared a report of lost personal property, which valued the loss at $832,209.95. *See* ECF No. 55-12.  Then, Manzi Appraisers & Restoration prepared a separate report as to the value of antiques and specialty items (items not included in the Sable Adjusters report) and found that the estimated replacement value of these items was between $292,355 to $365,475.  *See* ECF No. 55-14.

E. *Payments*

The amount and allocation of the insurance payments appears to be disputed by the parties.  Stimson attached a document titled "Calculations of Payments and Monies Owed" to her motion for summary judgment.  *See* ECF No. 55-11; *see also* ECF No. 73-7. According to Stimson's calculation, State Farm has paid a total of $1,384,248.04.[4]  This amount was made up of $939,812.63 for

---

[4] In her Supplemental Pleading updated exhibit, Stimson lists the Coverage A loss paid as $939,998.59, which changes the total to $1,384,434.

Coverage A loss (house/structure); $311,169.16 for Coverage B loss (contents of the house); and $133,266.25 for Coverage C loss (loss of use). *Id.* Stimson argues that she is entitled to $110,187.37 in addition under Coverage A (and at least another $460 under the appraisal alone), as well as: $345,080.84 for the contents of the house; $43,750.00 for debris removal; and $87,500.00 for ordinance/law compliance.[5]

State Farm asserts in its statement of facts that it paid Stimson a total of $942,000.00 under the Policy's "Coverage A,"; that prior to the appraisal determination State Farm had advanced payments totaling $796,112.73 for the dwelling alone; and that Stimson received a total amount of payments of $1,387,851.90. *See* ECF No. 56-1 at 1-2. Stimson disputes all three of these amounts, and points out that the documents cited to by State Farm show different amounts than the amounts cited by State Farm (with variances between $460 and $3,357.86). *See* ECF No. 60-1 at 6-7.

*F. Additional Facts Highlighted in the Supplemental Pleadings*

---

[5] Stimson also claims that she is owed payments from State Farm for "landscaping" and "other structures," but in her summary judgment motion she reserves these amounts/issues for trial. *See* ECF No. 55 at 8 n.4. In her supplemental pleading she changes tack and asks the Court to award her the full amounts of coverage under the policy "so the entire case can be resolved." ECF No. 73 at 14. She also updates the amounts owed by State Farm to be a total of $596,082.25.

As described above, both parties filed for summary judgment before State Farm responded to Stimson's discovery requests and produced individuals for depositions. After State Farm produced the claims file to Stimson and after Stimson deposed Gino Radovic, both parties filed supplemental pleadings. ECF Nos. 72, 73. Some additional facts were uncovered in the supplemental pleadings, and one particular fact is noteworthy: the parties directed the Court's attention to a letter dated May 18, 2023, sent by Sabel Adjusters on behalf of Stimson. That letter responds to State Farm's demand for an appraisal, and states: "This letter is to inform you that, on behalf of the insured… we accept State Farm's demand for an appraisal." *See* ECF No. 73-5 at 1. The letter also selects an appraiser. *Id.*

The additional facts contained in State Farm's supplemental pleading are addressed in the sanctions section of this opinion.

## Analysis

The Court begins its analysis by addressing the outstanding discovery and sanctions issue and then moves on to the pending motions for summary judgment.

I. *State Farm Discovery Sanctions.*

As summarized above, this Court issued a discovery order that State Farm chose not to comply with. At a hearing in December of 2025, the Court attempted to figure out why State Farm had ignored Stimson's discovery requests, ignored Stimson's

13

motion to compel discovery, and then ignored the Court's discovery order. Counsel for State Farm explained that he had left his former firm, and that although he had not intended to disobey a court order he had been ill-equipped to comply. The Court set new deadlines. After the hearing, State Farm did take some steps to comply. Stimson was able to depose Gino Radovic on February 23, 2026, though she complained that he had not been shown a copy of the Notice of Deposition, had not brought any of the documents listed in the Schedule of Documents, and could not explain why State Farm had failed to provide certain discovery. ECF No. 71 at 6. On January 14, 2026, State Farm produced the entire claim file (10,467 pages). ECF No. 71 at 5. The next day, State Farm sent unsigned answers to Stimson's first set of discovery requests, in which State Farm responded "Contained in claim file" to almost every interrogatory and request for production without further elaboration. *See* ECF No. 71-9.

Counsel for Stimson followed up and requested complete discovery responses. ECF No. 71 at 6. State Farm provided new responses on January 27. ECF No. 71-12. As Stimson points out, these responses included numerous objections even though under the Federal Rules of Civil Procedure objections were long waived because the responses were untimely.[6] Moreover, many of these

---

[6] Federal Rule 33 of Civil Procedure explicitly states that "the responding party must serve its answers and any objections

14

objections were impermissible boilerplate objections.  *See,*
*e.g., American Rock Salt Co., LLC v. Norfolk Southern Corp.*, 228
F.R.D. 426, 432 (W.D.N.Y. 2004) ("Moreover, generalized
objections that discovery requests are vague, overly broad, or
unduly burdensome are not acceptable, and will be overruled.");
*Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012)
("'[B]oilerplate objections that include unsubstantiated claims
of undue burden, overbreadth and lack of relevancy,' while
producing 'no documents and answer[ing] no interrogatories…are a
paradigm of discovery abuse.'").  In a few answers, State Farm
merely again referred to the entirety of the claim file.[7]  ECF
No. 71-12.  State Farm responds that its written responses,
"submitted on January 26, 2026, identified claim participants
and provided key figures and supporting materials, reflecting

within 30 days after being served with the interrogatories" and
that "the grounds for objecting to an interrogatory must be
stated with specificity.  Any ground not stated in a timely
objection is waived unless the court, for good cause, excuses
the failure."  Fed. R. Civ. P. 33(b)(2), (4).  Rule 34 also
requires responses within 30 days, *see* Fed. R. Civ. P.
34(b)(2)(A), and though it does not have a specific waiver
provision courts read one in.  *See, e.g., Horace Mann Ins. Co.*
*v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006)
(explaining courts apply Rule 33's waiver language to Rule 34
and citing cases); *Land Ocean Logistics, Inc. v. Aqua Gulf*
*Corp.*, 181 F.R.D. 229, 236-37 (W.D.N.Y. 1998) ("Courts have held
that a failure to respond or object to a [Rule 34] discovery
request in a timely manner waives any objection which may have
been available.").
[7] Stimson also argues that the Interrogatories were not properly
signed.  ECF No. 71 at 6.

substantive engagement rather than evasion." ECF No. 78 at 2. State Farm does acknowledge a "delay in its responses." *Id.*

On March 5th, Stimson filed a motion for sanctions against State Farm, citing to the continued discovery noncompliance. ECF No. 71. Stimson asks the Court to "enter a default judgment against State Farm on all claims as a sanction commensurate with the scope and persistence of its noncompliance." ECF No. 71 at 9 (citing Fed. R. Civ. P. 37(b)(2)(A)(vi)). In the meantime, State Farm filed a supplemental pleading (which the Court had permitted the parties to do). State Farm's pleading is 477 pages long, because State Farm chose not to file the exhibits separately. ECF No. 72. For the most part, State Farm—where it chooses to provide citations--refers generally to the exhibits, rather than identifying specific page numbers to assist the Court.[8] On March 11th, State Farm filed an additional 301 pages

---

[8] For example, State Farm cites to its Exhibit 65 for the proposition that "[t]he claim file further substantiates State Farm's valuation method with detailed, line-by-line inventories of all claimed personal property" because it has "inventories, often prepared in conjunction with the public adjuster, list each item's description, room, quantity, replacement cost, estimated age, condition, applicable sales tax, depreciation rate and amount, actual cash value, and categories for 'estimate', 'documentation', and 'per invoice' payments." ECF No. 72 at 15. Yet Exhibit 65 is a 117-page "change report" with the following categories: description, qty, remove (all set at "0.00"), replace, "O&P" (all set at "0.00") and "total." *See* ECF No. 72 at pp 144-261. State Farm claims that "only the ACV will be paid" until after repair or replacement, ECF No. 72 at 18, yet it provides an exhibit that it claims shows actual cash value but that only has a category for "replace." Moreover, as

16

of a deposition with the Court, and on March 17th, State Farm

again filed the same 301 pages with a cover page.  ECF Nos. 74,

75.

On March 27, State Farm filed responses to Stimson's Motion

for Sanctions and Motion to Exclude.  ECF Nos. 77, 78.  State

Farm argues that Stimson did not show an intentional nor bad

faith violation of the court order, nor willful noncompliance or

prejudice warranting sanctions.  ECF No. 78 at 5.  State Farm

did not explain the delay in its responses nor did State Farm

explain why it believes "substantive engagement" rather than

full compliance would be sufficient to cure its previous

defiance of this Court's order.

Under Federal Rule of Civil Procedure 37(b)(2)(A), failure

to obey an order to provide discovery may be sanctioned with

further just orders, including "directing that the matters

embraced in the order or other designated facts be taken as

established for purposes of the action, as the prevailing party

claims;" or "prohibiting the disobedient party from supporting

---

Stimson points out, State Farm makes no attempt to further
authenticate, explain, introduce, or summarize this exhibit—it
merely cites to it.  State Farm responds that Rule 56 "allows
reliance on materials that could be presented in admissible form
at trial."  ECF No. 77 at 2; *see also Smith v. City of New York*,
697 Fed. Appx. 88 (2d Cir. 2017) ("[S]o long as the evidence in
question will be presented in admissible form at trial, it may
be considered on summary judgment." (internal quotation marks
omitted)).

or opposing designated claims or defenses, or from introducing designated matters in evidence;" or "striking pleadings in whole or in part;" or even "dismissing the action or proceeding in whole or in part." *See* Fed. R. Civ. P. 37(b)(2)(A). The district court has wide discretion when imposing sanctions under Rule 37, and its discretion may be evaluated on appeal with factors including the "willfulness of the non-compliant party or the reason for noncompliance;" the "efficacy of lesser sanctions"; the "duration of the period of noncompliance;" and "whether the noncompliant party has been warned of the consequences of noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012). Where a party seeks to frustrate the design of the discovery provisions of the Federal Rules of Civil Procedure "by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

In this case, Stimson first noticed the deposition in December of 2024, and sent discovery requests shortly thereafter. State Farm did not schedule the deposition, and did not respond to the discovery. *See* ECF No. 54. Stimson moved to compel in April of 2025. State Farm did not respond, and this

18

Court granted that motion on June 25, 2025, ordering State Farm to provide responses to the discovery within 14 days.  *See* ECF No. 54 at 2.

When Stimson filed for summary judgment in mid-July, State Farm had apparently taken *no steps* to comply with this Court's order.  Moreover, State Farm filed its own motion without acknowledging, or explaining, its defiance of the rules of discovery or the orders of this Court.  In its motion, State Farm wrote that despite "nearly two (2) years of litigation, the Plaintiff has uncovered no admissible evidence to support any of her counts alleged in the Complaint."  *See* ECF No. 52-2.  Yet State Farm did not mention its apparent refusal to participate in discovery.

At the hearing held by the Court in December, counsel for State Farm explained that he had left his former firm, and that although he had not intended to disobey a court order, he had been ill-equipped to comply.  The Court set new deadlines. State Farm has since produced its entire claims file to Stimson, and has provided access to Gino Radovic in order for his deposition to be taken.  However, it has been over a year since Stimson first sent out her first set of discovery responses.  In that time, State Farm breezed past two Court-imposed deadlines, and it is not clear—still—that State Farm has made a good faith effort to answer her requests.

19

State Farm has been given chance after chance to explain to this Court why its failure to participate in discovery was anything but willful, and has failed to do so.  In its supplemental pleading, State Farm merely stated that it had "provided Plaintiff with the entire claim file on January 14, 2026."  ECF No. 72 at 1.  In its response to Stimson's Motion for Sanctions, it acknowledged—without explaining—a delay.  ECF No. 78 at 2.  It stated that its late responses "reflect[] substantive engagement."  *Id.*

The Court finds that State Farm has ignored not only the discovery process in this case, but also this Court's direct and explicit orders on discovery.  State Farm has not taken advantage of either its initial opportunity to respond to Stimson's motions, or its subsequent opportunities to come into full compliance after the Court issued an order and held a hearing.  State Farm had every opportunity not only to comply with discovery, but also to explain to this Court its reason for failing to do so.  Instead, State Farm has ignored Stimson, this Court, and its discovery obligations.  This behavior is improper.

As a sanction for State Farm's continued noncompliance, the Court is striking State Farm's supplemental brief in support of its motion for summary judgment.  ECF No. 72.  The Court will not consider the new arguments made, or exhibits filed with, the

20

supplemental pleading.  The Court issues this sanction as a discovery sanction for continued noncompliance; however, the Court also notes that—even were the Court to have considered the pleading—it is not the role of a Court to "hunt[] through voluminous records without guidance from the parties."  *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (internal quotation marks omitted).

This sanction deals with State Farm's noncompliance at the summary judgment stage.  For the purposes of trial, the Court invites Stimson and State Farm to submit further briefing on what evidence State Farm should be precluded from relying upon. The Court will consider precluding all evidence that State Farm should have identified, but did not, in its discovery responses. Some types of evidence, such as experts or expert reports, may not have been disclosed by State Farm and likely cannot be identified this late in the proceedings.

Rule 37(b)(2)(C) provides that when a party fails to obey a discovery order, "[i]nstead of or in addition to [granting relief available under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses

21

unjust." Fed. R. Civ. P. 37(b)(2)(C). State Farm has not provided the Court with any reason for its noncompliance that would lead the Court to determine that State Farm's failure was justified, or that an award of expenses would be unjust. Accordingly, within 30 days of this motion, Stimson's counsel may serve and file an affidavit detailing the reasonable costs and attorney's fees incurred in drafting and filing Stimson's motion to sanction State Farm (ECF No. 71). Within fourteen days of the filing of the affidavit, State Farm shall serve and file its objection, if any, to the costs and fees request.

 II.  *Cross Motions for Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (alteration in original) (citation and internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Id.* at 166-67 (alterations in original) (citations and internal quotation marks omitted).

In cases involving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)). Where a party has not responded to another party's motion for summary judgment, Rule 56 still requires the Court to

23

examine and verify that the submission suffices to support an entry of judgment. *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed."). However, "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may may be deemed an abandonment of the unmentioned claims." *Jackson*, 766 F.3d at 195.

This opinion goes through each count that the parties have moved for summary judgment upon, addressing each motion in turn. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Accordingly, Vermont law governs the substantive claims. *See British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 81 (2d Cir. 2003) (applying law of forum state in diversity case in absence of disagreement, without conducting choice of law analysis).

A. Breach of Contract

To recover damages for breach of contract in Vermont, a party must show the existence of a contract, material breach of a contractual duty, and damages. *See Ben & Jerry's Homemade,*

24

*Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1212 (D. Vt. 1996) (existence of contract and breach of contractual duty); *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 34 n.4 (recovery on the basis of damages). "Interpretation of an insurance policy, like other contracts, involves the resolution of a question of law" and interpretation begins with giving "effect to the plain meaning of the terms of the policy if the meaning is unambiguous." *Town of Ira v. Vt. League of Cities and Towns*, 2014 VT 115, ¶ 5.  Where there is ambiguity, Vermont courts construe policy language "in favor of the insured." *Id.*

    1. Breach of Contract for Coverage A (and Add-Ons)

State Farm has moved for summary judgment on all claims in this case, including the breach of contract claim.  *See* ECF No. 56-2 at 3-4.  State Farm argues that there is no dispute about a contractual breach, because State Farm participated in an appraisal and paid a total of "approximately $942,000.00" under Coverage A for Ms. Stimson's dwelling.  *See id.* at 3.  Drawing all reasonable inferences for Stimson, neither of these facts warrant summary judgment for State Farm.

State Farm argues that there was no contractual breach where an appraisal was ongoing at the time that Stimson filed suit in this case.  To support its position, State Farm quotes the insurance policy as stating: "Appraisal. If you and we fail

25

to agree upon the amount of loss, the amount of loss will be set by appraisal."  ECF No. 56-2 at 3.  In fact, the full policy reads: "If *you* and *we* fail to agree on the amount of loss, the amount of loss will be set by appraisal if *you* and *we* agree to appraisal.  Only *you* or *we* may request and agree to appraisal. An agreement for appraisal must be in writing."  ECF No. 55-1 at 24 (bold and italic emphasis in original; underline emphasis added).  The plain language of the policy clearly conditions the appraisal setting the amount of loss upon agreement by both parties to the appraisal—and, in fact, upon that agreement being made in writing.  Stimson states that State Farm "demanded" that she participate in an appraisal (ECF No. 55-16 at 3).  Insurance policies can give either party the right to demand an appraisal in the event of disagreement.  *See, e.g., Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 149 (2d Cir. 2019) (insurance policy stated: "If we and the insured do not agree on the amount of loss, either may, within 60 days after proof of loss is filed, demand an appraisal of the loss."); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins.*, 600 F.3d 190, 193 n.3 (2d Cir. 2010) (explaining that policy allows "either party" to "demand appraisal by two appraisers and an umpire" if they cannot agree on the amount of loss).  This policy does not.  This policy requires written agreement.

After the Court expressed particular interest in whether there was a written agreement in the December hearing, the parties directed the Court's attention to a letter sent from Sabel Adjusters, LLC, on behalf of Stimson, on May 18, 2023. That letter responds to State Farm's demand for an appraisal, and states: "This letter is to inform you that, on behalf of the insured… we accept State Farm's demand for an appraisal."  *See* ECF No. 73-5 at 1.  The letter also selects an appraiser.  *Id.* This letter was sent in response to State Farm's demand letter, which on the one hand was a demand that told Stimson she was "required" to select an appraiser, yet on the other hand directly quoted the appraisal language of the policy.

With that said, whether or not Stimson's response constituted an agreement, Stimson has presented evidence that State Farm's appraiser delayed the appraisal for so long that Stimson filed this suit and withdrew from the appraisal.  *See, e.g.,* ECF No. 55-7 (email from Stimson in October of 2023, stating that State Farm's appraiser "has now stopped returning phone calls, and dragged his feet for four months.").  It is undisputed that she filed suit in October of 2023, while the appraisal award was not handed down until November of 2023.  The policy allowed Stimson to file suit until an award had been issued. *See* ECF No. 55-1 at 25 ("Once an appraisal award has been determined, **you** will not be permitted to file suit against

27

*us.*").[9]  Moreover, though State Farm argues that it has paid the amount of the appraisal, the policy states that there shall be a "written report of agreement" signed by the appraisers, and that "in all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and, if applicable, the market value of each item in dispute."  ECF No. 55-1 at 24.  Yet here, the specific items in dispute—of which there were 27 in State Farm's initial demand for appraisal—were all mushed together into an appraisal award that included only one value that purported to include "all dwelling damages in totality."  This failure to follow the terms of the policy in completing the appraisal may be why State Farm and Stimson disagree on what items were covered by the appraisal, but it does not mean—as State Farm argues—that there was no breach of contract.

Finally, Stimson has presented evidence that State Farm has not even paid for the full appraisal amount (and that State Farm is instead $460 short).  Tellingly, State Farm only argues in

---

[9] Of note, this policy is not a policy in which appraisal is a "condition precedent" to suit.  First, because the express terms of the policy state the opposite: that if an award is issued, at that time suit may no longer be filed.  ECF No. 55-1 at 25 ("Once an appraisal award has been determined, *you* will not be permitted to file suit against *us*.").  Second, because there is no other language that would indicate appraisal is a condition precedent to suit.  *See, e.g.,* COUCH ON INSURANCE § 210:49 *Particular policy language as establishing precondition* (3d ed. 2025).

its motion that it has paid an "approximate" total under the policy, and that it has not breached the contract.  State Farm does not argue that it has obtained any kind of waiver from Stimson.  In Vermont, however, it is not enough for the insurer to pay amounts on a claim and unilaterally claim that payments made satisfy the amount owed.  As the Vermont Supreme Court stated in a vehicle repair case:

> To whatever extent the trial court concluded that defendant had fully satisfied its contractual obligation under the policy because defendant made payments on the collision claims in some amount, this was error.  Whether the amounts paid by defendant satisfied defendant's obligation to its insured was the central disputed issue here.  And it is undisputed that defendant did not obtain a release of claim or otherwise satisfy the elements of a complete defense foreclosing the insureds, and thus plaintiff's, ability to contest the sufficiency of the payments.

*Parker's Classic Auto Works, Ltd. v. Nationwide Mutual Insurance Company*, 2019 VT 46, ¶ 11.  Whether State Farm has satisfied its contractual obligation under the policy is at issue here: State Farm cannot win summary judgment by arguing that it has paid *some* amount.  Drawing all inferences for Stimson, the Court must deny State Farm's motion for summary judgment on this count.

Turning to Stimson's motion for summary judgment under Coverage A, the Court also finds that there are disputed material facts for this breach of contract claim.  Though this Court does not agree with State Farm's argument that Stimson was bound by the appraisal amount as to the entirety of Coverage A,

29

ultimately—drawing all inferences in favor of State Farm—the Court cannot say that Stimson has presented enough evidence to be entitled to summary judgment on the full amount of her policy limit for Coverage A.  Stimson has attached invoices saying that as of May 31, 2024, she had already been invoiced for $1,068,147.38, with $169,618.02 of that amount being for repairs done for code compliance.  *See* ECF No. 55-4 at 3.  She has not clearly shown that she is entitled to the full remainder of her policy limit for Coverage A and its subsets, as she argues in her supplemental memorandum, and indeed she now asks for summary judgment upon some items—such as landscaping—that were not included in her initial partial motion for summary judgment and that she admits she has not yet completed the landscaping for. *See, e.g.,* ECF No. 73 at 14 (asking the Court to award Stimson the full $52,500 for landscaping without attaching receipts for landscaping: "Though Ms. Stimson has spent some money on trees, shrubs and landscaping, she is unable to do all the landscaping until the house is repaired and she has received the money to restore the landscape.").

In sum, the Court denies both motions for summary judgment as they relate to the breach of contract claim under Coverage A. However, the Court has found that the appraisal agreement was not binding upon the parties because it did not properly list out the disputed items of disagreement.  With this question of

law taken care of, the parties may muster their remaining evidence as to Coverage A and present it at trial.

2. Breach of Contract for Coverage B

As for the breach of contract claim for Coverage B (coverage for personal property within the house), State Farm devoted one sentence to it: "Plaintiff Has Produced No Evidence that State Farm Had No Reasonable Basis for Disputing Amounts Sought By Plaintiff Under the Policy Relating to Personal Property". ECF No. 56-2 at 4. The Court denies State Farm's motion for summary judgment as it is based upon this cursory statement.

Turning to Stimson's motion for summary judgment on the breach of contract claim for Coverage B, she provided the following evidence in support of her claim: (1) a report of lost personal property completed by Sable Adjusters, valuing the loss at $832,209.95;[10] and (2) a separate report as to the value of antiques and specialty items prepared by Manzi Appraisers & Restoration, estimating the replacement value of these items as between $292,355 and $365,475. ECF Nos. 55-12, 55-14. Stimson also provided an affidavit explaining the process of using Sabel Adjusters and Manzi Appraisers, and stating that she agreed that the values of the personal property loss were accurate. ECF No.

---

[10] The report lists the RCV as $832,209.95 and the ACV as $881,592.10. ECF No. 55-12 at 105.

31

55-16 at 6.  And she explained that her policy limit is capped at $656,250).  ECF No. 55-2 at 4-5.

State Farm may value the personal property at $489,072.77. At least, there was a "Change Report" in the claims file that both Stimson and State Farm have referred to.  ECF No. 73-10. However, as mentioned above, this report provides minimal information and it has not been explained to the Court.

The Court finds that, at this stage, there are still genuine issues of material facts such that it cannot grant summary judgment to Stimson at this stage.  She may present her valuations at trial to answer questions about the valuation of her personal property and the categories/items of property that were included in the appraisals, and at that time she may also address the questions around how much State Farm has paid under Coverage B and how much is left to be paid.

3. Bad Faith

Stimson pled a separate count for "good faith and fair dealing" and "bad faith" in her complaint.  See ECF No. 6 at 2-3.  In her motion for summary judgment, however, she briefed and analyzed good faith in conjunction with her breach of contract briefing, and she separately addresses bad faith.  She concludes by asking the Court for summary judgment on her "breach of contract, bad faith" and VCPA claims.  *See* ECF No. 55 at 25.

Stimson only mentions the "covenant of good faith and fair dealing" in conjunction with her breach of contract briefing, and does not separately move for summary judgment on this Count. The covenant of good faith and fair dealing is implied in every contract. *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993). "There is no exemption for insurance policies." *Shulman v. Concord Gen. Mut. Ins. Co.*, 767 F. Supp. 3d 116, 120 (D. Vt. 2024). In some ways, the covenant provides a broader cause of action because breach of the underlying contract is not necessary to show that the covenant has been breached; the covenant also covers actions taken in terminating or winding up a contract as well as contract enforcement. *See Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶¶32-33. However, the Vermont Supreme Court has been clear that it "will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract based upon the same conduct." *Id.* "To the extent that" a party's good faith and fair dealing claim is duplicative of its breach-of-contract claim, "it cannot be sustained as a matter of law." *Beldock v. VWSD, LLC*, 2023 VT 35, ¶53; *see also Shulman*, 767 F. Supp. 3d at 120 (good faith and fair dealing covenant "does not replace express contract provisions, and when those appear in the parties' contract, a breach is governed by conventional principles of contract law"

33

whereas "[i]t is disputes not governed by the terms of the contract that may give rise to a claim of breach of the covenant."). Accordingly, this Court will only analyze the separate conduct that Stimson pled under her "bad faith" section.

"For an insured to establish a claim of bad faith against its insurer it 'must show that (1) the insurer had no reasonable basis to deny the insured the benefits of the policy, and (2) the company knew or recklessly disregarded the fact that it had no reasonable basis for denying the insured's claim.'" *Fine Paints of Eur., Inc. v. Acadia Ins. Co.*, No. 2:08-cv-81, 2009 U.S. Dist. LEXIS 24188, 2009 WL 819466, *20 (D. Vt. Mar. 24, 2009) (quoting *Peerless Ins. Co. v. Frederick*, 177 Vt. 441 (Vt. 2004). A "fairly debatable" claim is not sufficient for a bad faith claim. *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 403 (Vt. 1995).

Stimson argues that there are two reasons State Farm acted in bad faith. First, State Farm demanded that Stimson agree to go forward with the appraisal process, even though the policy specifically stated that an appraisal may only happen if the parties both agree to engage in the appraisal. Drawing all inferences for State Farm, this conduct is not enough for summary judgment. Though the Court holds that Stimson is not ultimately legally bound by the appraisal, it does not follow

34

that sending a letter with the word "demand" to Stimson, and then having her participate in the appraisal process, rises to the level of "knowing or reckless conduct required for a finding of bad faith." *Murphy v. Patriot Ins. Co.,* 2014 VT 96, ¶ 24.

Second, Stimson argues that State Farm refused to pay, without any basis for this refusal, her expenses incurred for building ordinance or law compliance, debris removal, and the remaining balance of her personal property. As with her Vermont Consumer Protection Act claim, it may be that Stimson's bad faith allegation extends beyond the mere breach of contract claim because Stimson states that State Farm used the appraisal process to run out the clock and prevent her from filing suit to enforce her rights under the contract—all while State Farm was aware that she was in a vulnerable position (having been diagnosed with cancer). Drawing all inferences for State Farm, however, the Court cannot say that Stimson has demonstrated that there is no genuine dispute of material facts on this claim at this stage. Stimson has not developed the factual record enough at this time for the Court to be able to conclude that her bad faith claim extends beyond a claim that was fairly debatable.

B. Vermont's Consumer Protection Act

In Vermont, a coverage dispute is insufficient to show consumer fraud. To recover under the Consumer Fraud Act: "(1) there must be a representation, practice, or omission likely to

35

mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision with regard to a product." *Greene v. Stevens Gas Serv.*, 177 Vt. 90 (Vt. 2004) (quoting *Peabody v. P.J.'s Auto Vill., Inc.*, 153 Vt. 55 (Vt. 1989)).  Yet "a mere coverage dispute is insufficient to show consumer fraud."  *Id.*

Here, Stimson has shown evidence of serious facts surrounding the denial of her coverage. She has claimed that State Farm "kept promising" her that it was "there for her," and she has stated that had she "known that State Farm would not honor its commitments to its policy, then she would have looked to other insurance companies."  *See* ECF No. 55 at 23-24. Stimson claims that "[a]n insurance company failing to timely pay claims is something that clearly offends the public, since that is the reason people buy insurance."  *See* ECF No. 60 at 16. This is not enough, however, for her to win on summary judgment, because "[u]nder that logic, any denial of coverage becomes consumer fraud."  *Fine Paints of Eur., Inc.*, 2009 U.S. Dist. LEXIS 24188, at *20-21.

Turning to State Farm's motion, the Court cannot grant that either.  Drawing all factual inferences for Stimson, she has evidence that would tend to show that State Farm sold her plans

36

that it has since not only denied her coverage of, but also point-blank ignored.  This case is thus distinguishable from *Mooers v. Middlebury Coll.*, No. 2:20-cv-00144, 2021 WL 4225659 (D. Vt. Sept. 16, 2021), wherein Middlebury's statements regarding its educational services could not reasonably be interpreted to create an expectation "that those on-campus services would continue, uninterrupted and unchanged, in the midst of a pandemic."  *Id.* at *11.  The Court denies both summary judgment motions on this claim.

### Conclusion

For the reasons set forth above, the Court ORDERS the following:

- The Court sanctions State Farm by striking its supplemental pleading (ECF No. 72).  The parties may submit additional briefing addressing whether State Farm should also be sanctioned at the trial stage by the preclusion of certain evidence.

- The Court grants Stimson reasonable costs and attorney's fees incurred in drafting and filing Stimson's motion to sanction State Farm (ECF No. 71). Accordingly, within 30 days of this opinion, Stimson's counsel may serve and file an affidavit detailing the reasonable costs and attorney's fees, and within fourteen days of the filing of the

37

- affidavit, State Farm shall serve and file its objection, if any, to the costs and fees request.

- The Court DENIES Stimson's summary judgment motion (ECF No. 55).

- The Court DENIES State Farm's summary judgment motion (ECF No. 56).

- Having fashioned its own sanctions regarding State Farm, the Court DENIES as moot Stimson's pending motions regarding sanctions and to exclude State Farm's supplemental memorandum.  Those motions are denied without prejudice.  ECF Nos. 71, 76.

- The Court sets a pretrial conference date of June 8th, 2026, at 11:30 a.m.

- The Court sets a jury selection date for trial of August 31, 2026, at 9:30 a.m.


DATED at Burlington, in the District of Vermont, this 31st day of March 2026.


/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge